Filed 1/8/16  P. v. Lawrence CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B262639 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. A352162-01) |
| REGINALD D. LAWRENCE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lance A. Ito, Judge.  Affirmed.

Law Offices of Robert D. Salisbury, Robert Salisbury for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Appellant Reginald Lawrence was convicted of various felonies in 1981. In 2013, he applied for a certificate of rehabilitation relating to his 1981 convictions. The trial court denied his application. Appellant appealed; we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 1979, when appellant was 28 years old, he met a 14-year-old girl while she was walking home from a bus stop. She asked him for a drink of water and went inside his residence. Once they were inside, appellant attempted to "sweet talk" the victim into becoming one of his "ladies." She asked to leave, but appellant locked all the doors and sexually assaulted her. After about two and a half hours, appellant's brother came home and appellant permitted the victim to leave.

Two months later, in July 1979, appellant kidnapped a woman at gunpoint from a bus stop. He took the woman to his apartment. When she tried to break a window to escape, appellant became irate, struggled with the victim, and forcibly raped her. He threatened to kill her if she tried to escape. Appellant ordered the victim to orally copulate him, but she refused. He later dropped her off at an intersection a few miles from where he kidnapped her. A later search of appellant's apartment revealed handgun ammunition and what appeared to be illegal drugs.

For both incidents, appellant was convicted of rape with force and threat (former Penal Code, §§ 261.2, 261.3[1]), assault with attempt to commit rape (§ 220), attempted oral copulation (§§ 664, 288a, subd. (b)(2),), attempted robbery (§§ 664, 211,), and false imprisonment (§ 237). Appellant was sentenced to 12 1/3 years in prison.

In 2013, appellant petitioned for a certificate of rehabilitation under section 4852.01, et seq. Under these statutes, "A convicted felon can request a certificate of rehabilitation, and the superior court may issue such an order, upon a compelling showing of postsentence reform. If granted, the certificate of rehabilitation serves as an

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

automatic application and judicial recommendation for a gubernatorial pardon in the particular case." (*People v. Ansell* (2001) 25 Cal.4th 868, 871 (*Ansell*).)

The petition is to be filed in the superior court. (§ 4852.06) A filed version of appellant's petition is not included in the record on appeal. Once such a petition has been filed, a trial court "may request from the district attorney an investigation of the residence of the petitioner, the criminal record of the petitioner as shown by the records of the Department of Justice, any representation made to the court by the applicant, the conduct of the petitioner during his period of rehabilitation . . . and any other information the court may deem necessary in making its determination. If so requested, the district attorney shall provide the court with a full and complete report of such investigations." (§ 4852.12.) It is unclear from the record whether the trial court requested such a report in this case. The district attorney's office filed a report prepared by its Bureau of Investigation.[2]

The district attorney's report described the crimes for which appellant had been convicted, as stated in the probation officer's report. The report noted that appellant claimed he had resided at his current residence for 25 years, was employed as a senior pastor, owned two cars, and had a bank account with a comfortable average balance. There were no indications in the report that the district attorney's office attempted to verify any of this information. The report directly quoted appellant's justifications for a certificate of rehabilitation, which included his representations that he has been married for 24 or 25 years,[3] has children and grandchildren, and has "repented to God and to my family for all the mistakes and errors of my youth." The report quoted appellant's additional representations: "I am the senior pastor of a Christian church. I hold a Ph.D[.] in religious studies and I've pastored for 20 yrs as of Feb. 12, 2015. I live right before God and I regret all of past [sic] mistakes of my youth. I am working hard to help others

---

[2] Unlike the report discussed in *People v. Blocker* (2010) 190 Cal.App.4th 438, 441 (*Blocker*), this report in this case did not take any position on whether the petition should be granted.

[3] One sentence says 24 years, and another sentence says 25 years.

to improve their lives and I want my past to be cleaned up. My life is clean, honest and productive. I'm working to build lives so my life must be a right example." The report contains no information verifying or discrediting any of appellant's claims.

The report included appellant's criminal record, which consisted of numerous arrests for various crimes, as well as convictions for grand theft of property and several drug crimes predating his 1981 convictions.[4] Appellant was paroled in 1987; he violated parole in 1988 and was returned to prison to finish his term. In 1990, appellant was convicted of felony possession of a controlled substance and sentenced to 16 months in prison. He was paroled several months later, but was incarcerated in 1991 for violating parole again. He was arrested in 1995 for rape, but no charges were brought. There were no arrests or convictions listed after 1995. The report also noted that appellant was known by several aliases.

The report enclosed four letters supporting appellant. The first, which was undated, was from the chancellor at a bible college and recommended appellant "for consideration in any future ministry endeavors for which he may apply." The letter noted that appellant "is a strong leader, a good listener, and has been the picture of a devoted and loving husband and father to his family." The second letter, dated December 2010, was from the founder of a ministry, and recommended appellant "as a student in your academic program." The third letter, from a California state senator, was dated January 25, 2013 and noted that appellant "goes out of his way to donate his time to worthy causes that benefit the community," and "it takes a truly altruistic individual like Pastor Lawrence to offer safe harbor to those in need." The fourth letter, from the president and CEO of a media company, also was undated, and recommended "to everyone who has the opportunity to work with Apostle Lawrence to do so. If you can support his mission please do so." This letter also stated that the writer and appellant had worked on several projects together, "such as, church fundraisers, youth outreach, and young people with the opportunity to broaden their horizon [s]."

---

[4] Appellant is not seeking a certificate of rehabilitation relating to these convictions.

An additional document filed by the prosecution on December 12, 2014 argued that appellant should not be granted a certificate of rehabilitation because a defendant convicted of violations of section "288 (A)" involving sex crimes against children is not eligible to receive a certificate of rehabilitation under section 4852.01, subdivision (d). This argument appears to have been made in error, because section 4852.01, subdivision (d) states that defendants convicted of violations of "Section 288" and "subdivision (c) of Section 288a" are not eligible for certificates of rehabilitation. Appellant, however, was convicted of violating subdivision (b)(2) of section 288a.[5] The bar in section 4852.01, subdivision (d) therefore does not apply to appellant.

A minute order dated December 26, 2014, stated that appellant's petition was taken under submission that day. There is no information in the record indicating whether a hearing was held. The trial court denied appellant's petition without substantive comment.

On December 31, appellant filed a document titled "Supplemental [sic] to Petition for Certificate of Rehabilitation." Included was a letter from appellant, stating, "I absolutely regret the errors of my past." He also said, "I am so very sorry for every stupid mistake I made, but I know that I cannot undo the past mistakes of my youth."

Appellant's letter stated that he was released from parole in 1994 and ordained as a minister in 1995. Appellant related that he obtained a G.E.D., took classes at Mt. San Antonio College, started a stripping and buffing company and a gardening service, and then enrolled in seminary school, where he eventually earned a "degree of Doctor of Ministry, Doctor of Philosophy in Religious Studies." According to the letter, appellant has had a local radio broadcast show for the past 16 years and has written a book titled "All About Marriage." The letter also detailed some of appellant's community

---

[5] The prosecution's argument seemed to confuse similarly numbered Penal Code sections. Section 288, subdivision (a), addresses "lewd or lascivious acts . . . upon or with the body . . . of a child who is under the age of 14 years." Section 288a relates to oral copulation, and subdivision (c) of that section involves a victim who is "under 14 years of age and more than 10 years younger" than the perpetrator. Appellant's crimes, including those involving the 14-year-old victim, do not fit either definition.

accomplishments as the pastor of his church, including organizing community functions with the mayor of Hawaiian Gardens, and working with food banks, clothing donations, and prison ministries. Appellant stated that in conjunction with another church he traveled to Seoul, South Korea to speak at multiple churches and meet with political leaders. He noted that he and his wife have been married for 24 years, have children and grandchildren, own their home, and own two additional properties that they rent to tenants.

In addition to his letter, appellant submitted transcripts from a bible college ostensibly showing the classes he took in 2010 and 2011 to earn his multiple degrees. Some of the transcripts, however, are unclear as to whether they are for appellant or his wife, Brenda Lawrence, because both names appear on different parts of the transcripts. Appellant also included copies of his degrees, including a "Doctor of Ministry" and "Doctor of Philosophy in Religious Studies" earned on the same day in 2011, as well as copies of various certificates and awards. He submitted an additional letter of recommendation from the mayor of Hawaiian Gardens, stating that "Pastor Lawrence and his church have had a positive influence in our community which should lead to a brighter future for all."

The trial court issued a minute order January 2, 2015 stating that it had read and considered appellant's supplemental petition. The court said it would treat the supplement as a motion to reconsider because the petition was denied shortly before the supplement was filed. The court denied the petition, stating, "The crimes for which the defendant was sentenced to state prison were serious, numerous, and violent. The defendant's performance upon his release on parole was poor. The character letters submitted and re-submitted in support of the Petition make no mention of the subject criminal conduct and are therefore of minimal weight and value. [¶] The Motion to Reconsider is denied."

Appellant timely appealed.

6

**STANDARD OF REVIEW**

"The decision whether to grant or deny a petition for a rehabilitation certificate rests in the sound discretion of the trial court, and the court's ruling will not be disturbed on appeal unless there is a clear showing of abuse of discretion." (*People v. Failla* (2006) 140 Cal.App.4th 1514, 1519.) "The standard test for ascertaining an abuse of that discretion is whether the court's decision exceeded the bounds of reason." (*Blocker*, *supra*, 190 Cal.App.4th at p. 444.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

**DISCUSSION**

As noted above, "A convicted felon can request a certificate of rehabilitation, and the superior court may issue such an order, upon a compelling showing of postsentence reform. If granted, the certificate of rehabilitation serves as an automatic application and judicial recommendation for a gubernatorial pardon in the particular case." (*Ansell*, *supra*, 25 Cal.4th at p. 871.)

When a felon requests a certificate of reform, "[t]he district attorney may be directed to investigate the petitioner . . . and report to the court. (§ 4852.12.) The superior court holds a hearing where it considers testimonial and documentary evidence relevant to the petition. (§§ 4852.1, 4852.11.) The court may require the production of judicial, correctional, and law enforcement records relating to the petitioner's crimes, supervised release, and conduct during the rehabilitation period. (§ 4852.1.) The court may issue a certificate of rehabilitation if it finds the petitioner is both rehabilitated and fit to exercise the privileges and rights he lost due to his conviction. (§ 4852.13, subd. (a).) 'The standards for determining whether rehabilitation has occurred are high.' (*People v. Ansell*, *supra*, 25 Cal.4th 868, 887.) The certificate of rehabilitation is then forwarded to the Governor; the Board of Prison Terms; (now the Board of Parole Hearings (see Gov. Code, § 12838.4)); the Department of Justice; and, if the person has been twice convicted of a felony, the Supreme Court (which, in writing and by a majority, must recommend a pardon before one may be granted). (§§ 4852.14, 4852.16.)

7

'[T]he pardon decision is discretionary, and rests ultimately with the Governor.' (*Ansell*, at p. 891.)" (*Failla*, *supra*, 140 Cal.App.4th at p. 1519.)

Not all felons are eligible for certificates of rehabilitation. Section 4852.01 states, "This chapter shall not apply to persons serving a mandatory life parole, persons committed under death sentences, persons convicted of a violation of Section 269, subdivision (c) of Section 286, Section 288, subdivision (c) of Section 288a, Section 288.5, Section 288.7, or subdivision (j) of Section 289, or persons in military service." (§ 4852.01, subd. (d).) These exclusions do not apply to appellant, so he is eligible for a certificate of rehabilitation.

However, mere eligibility does not compel the court to issue a certificate of rehabilitation. "[T]here is no circumstance under which the statutory scheme requires or guarantees issuance of a certificate of rehabilitation by the superior court." (*Ansell*, *supra*, 25 Cal.4th at pp. 887-888.)

Appellant argues on appeal that he is not the same person he was when he committed the crimes in 1979. He argues that the trial court erred in relying on the finding that the crimes from three decades ago were serious, numerous, and violent, because that has "nothing to do with whether or not Senior Pastor Lawrence is rehabilitated today." Appellant also argues that his poor performance on parole in the late 1980's and early 1990's, as noted in the trial court's order, does not reflect who he is today. Appellant notes his stable marriage, long-time home ownership, degrees, dedication to church, and community service, and asks, "[I]f Senior Pastor Lawrence is not rehabilitated then we have but only one question. Who is?"

Respondent argues that the trial court acted within its sound discretion. It notes that appellant's crimes were hardly youthful indiscretions; he was 28 years old when he committed the crimes at issue. Respondent notes that appellant is known by multiple names and has committed numerous crimes in the past. Respondent also points out that many of the letters submitted in support of the petition are recommendations for employment or school, and the letters do not indicate that the writers are aware of appellant's violent past.

8

Appellant has not demonstrated that the trial court abused its discretion. A certificate of rehabilitation calls for "a compelling showing of postsentence reform." (*Ansell*, *supra*, 25 Cal.4th at p. 871.) Here, however, the record contains no evidentiary support for any of appellant's assertions about his reformed life. He has not supported his arguments with declarations, a statement from his wife, evidence of his home or car ownership, documentation showing employment or income, or any other independent proof to support his assertions. Appellant has submitted only his own arguments, inconsistent bible college transcripts, and letters written by acquaintances recommending him for school or ministry work. The letters do not indicate that any of the writers knew about appellant's past history or efforts to reform. In addition, the letters are not written to the court, and none of them support or even address appellant's rehabilitation. Based on the record before us, we cannot say that the trial court abused its discretion by denying the petition.

Moreover, appellant committed a sex offense that carries with it a lifetime sex offender registration requirement. He sexually assaulted a 14 year-old victim in 1979. Two months later, he kidnapped another victim at gunpoint, brutally raped her, and threatened to kill her. Appellant says he now regrets the "errors of his past" and that he is "so very sorry for every stupid mistake [he] made," but he expresses no remorse for his crimes or insight into the devastating effects they had on the lives of his innocent victims.

Respondent asserts that even if appellant were to receive a certificate of rehabilitation, he would still have to register as a sex offender. (§ 290.5, subds. (a)(2)(B), (a)(2)(O).) Appellant does not dispute this. "[T]he Legislature perceives that sex offenders pose a 'continuing threat to society' and require constant vigilance." (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527.) This is especially true for someone such as appellant, who says he works with young people in a trusted leadership position as part of his youth ministry.

"The hurdles erected by the Legislature to obtain a certificate of rehabilitation are not intended to be easily surmounted. The trial courts are entrusted with the responsibility, in the exercise of a sound discretion, to ensure that the strict statutory

standards for rehabilitation are maintained." (*Blocker*, *supra*, 190 Cal.App.4th at p. 445.) We respect the efforts and growth appellant has made in rejecting his violent past and choosing to live an honorable life dedicated to home and church. But appellant has not shown that the trial court's decision "is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

## DISPOSITION

The judgment is affirmed.


## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


COLLINS, J.

We concur:

EPSTEIN, P. J.

MANELLA, J.

10