Filed 6/29/16  P. v. Lopez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTHONY ISIDRO LOPEZ,<br><br>    Defendant and Appellant. | G052168<br><br>(Super. Ct. No. M16198)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Sheila F. Hanson, Judge.  Affirmed.

Al West for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Meredith S. White, Deputy Attorneys General, for Plaintiff and Respondent.

Anthony Isidro Lopez appeals from the trial court's order denying his petition for certificate of rehabilitation and pardon. Lopez argues the trial court abused its discretion by denying his petition. We disagree and affirm the order.

FACTS

Lopez was born in 1957, the eldest of four children, and he helped his mother care for his three sisters while his father served in the military. After high school, Lopez served in the United States Air Force for eight years, earned both college and law school degrees, and was admitted to the State Bar of California (State Bar) in 1990.

In May 1995, Lopez pleaded guilty to misdemeanor sexual battery (Pen. Code, § 243.4, subd. (a), all further statutory references are to the Pen. Code) (the 1995 conviction), of his stepdaughter. The trial court suspended imposition of sentence and placed him on three years formal probation. The court ordered him to register pursuant to section 290. In May 1998, his probation was terminated. In April the following year, the trial court granted his petition for relief pursuant to section 1203.4.

In December 2004, Lopez pleaded guilty to failing to register as a sex offender (§ 290) (the 2004 conviction). The trial court suspended sentence and placed him on two years informal probation. In December 2006, his probation was terminated. In December 2014, the trial court granted his petition for relief pursuant to section 1203.4.

In March 2015, 57-year-old Lopez filed a petition for certificate of rehabilitation and pardon (the petition). The petition was supported by a motion and points and authorities. The petition was also supported by the following exhibits: Dr. Veronica A. Thomas's February 2015 report of her psychological examination; his "personal bibliography" and addendum; character reference letters from family, friends, and colleagues; criminal history and court records, college and law school transcripts; tax returns; and photographs.

2

Thomas, a clinical and forensic psychologist, interviewed and tested Lopez over the course of four days in the latter part of 2014. She requested police probation, and treatment records, but she did not receive them. She detailed his personal and professional history, including the circumstances of his 1995 conviction. She reported that "[o]ther than the prior conviction for molesting his stepdaughter, . . . Lopez has only had traffic tickets." She did not find he suffered from deviant sexual interests in minors. Thomas said Lopez did not have a personality disorder or mental illness, was not criminally minded, participated in the necessary treatment, and took "full responsibility" for the 1995 conviction. Based on the information provided, which did not include the records she requested, Thomas opined Lopez's 1995 conviction resulted from "situational and opportunistic behaviors, specific to environmental and internal stress factors" and not from "deviant sexual interests, compulsive sexual fantasies or behaviors." Thomas explained that although Lopez was "very defensive and reluctant to acknowledge the existence of person liabilities," this was not unusual for someone with Lopez's upbringing. She concluded Lopez "represent[ed] an extremely low to negligible risk of reoffending."

Lopez's stepdaughter, the victim, stated Lopez was her "constant counselor, confidant and best friend." She forgave Lopez, who had consistently been there for her and her son even though they are not biologically related, and she supported his request for a certificate of rehabilitation. Lopez's wife and in-laws all said Lopez was a loving and devoted husband and father and strived to put his family first. Lopez's family members, mother, sister, and son, attested to Lopez's dedication to becoming a better person, willingness to help and provide encouragement, and dependability. Two long time friends who were lawyers stated Lopez was an honorable person who strived to help others without asking for anything in return. Two former business associates said Lopez was a man of great character.

3

The Orange County District Attorney (the DA) opposed Lopez's petition. The DA's opposition was supported by Lopez's records from the State Bar and records detailing his criminal history. The DA opposed the petition because Lopez failed to inform Thomas that he suffered a conviction for failing to register as a sex offender (§ 290), and the State Bar disciplined him twice. First, Lopez was disciplined in 1996 as a result of the 1995 conviction. Second, Lopez was disciplined in 2007 after he stipulated to four counts of misconduct in two matters (the 2007 disciplinary proceedings). Two counts involved him failing to represent employees who signed demand letters creating the impression the employees were lawyers when they were not. One count concerned Lopez's failure to perform legal services competently when he did not adequately communicate with a law firm he believed assumed responsibility for a matter he was handling. The fourth count involved the misappropriation of client trust funds. The State Bar imposed and stayed a three-year suspension, placed him on three years of probation, and imposed six months actual suspension.

There was a hearing on Lopez's petition where the trial court heard argument. Lopez's counsel stated his office submitted documents concerning the 2004 conviction to Thomas. Counsel argued the State Bar disciplinary actions should not be persuasive. The court took the matter under submission to review the voluminous exhibits.

In a minute order, the trial court denied Lopez's petition without prejudice. After providing the applicable law, the court ruled as follows: "[Lopez's] criminal history, which contains no arrests or convictions since 2004, demonstrates he obeys the laws of the land. Based on the numerous letters of support, particularly the letter from the victim herself supporting the request for relief, it appears to the court that petitioner may be a candidate for a certificate of rehabilitation and pardon. However, [Lopez's] failure to mention in his initial petition that he was disciplined by the State Bar in 2007 for incidents of misconduct including misuse of a client trust account, failure to perform

4

legal services competently and assisting in the unauthorized practice of law, cause the court to question the degree of his veracity and candor toward the court. Additionally, . . . Thomas' report . . . indicates she was unaware of [Lopez's] 2004 conviction for failure to register. This appears to demonstrate that [Lopez] failed to inform . . . Thomas of this conviction and indicates he was not candid with her. As such, the court is concerned [Lopez] may not be fully rehabilitated so as to merit the requested relief at this time."

On June 25, 2015, Lopez filed a motion for reconsideration supported by his declaration. As relevant here, Lopez declared, "The facts are that [he] provided . . . Thomas [his] entire history. [Thomas] was well aware of [his] profession as a lawyer. [He] also submitted the entire packet to her, which [he] believe[d] include[d] [his] statement about [the 2004 conviction]." The same day, he appealed from the trial court's order denying the petition. Two weeks later, the trial court denied Lopez's motion for reconsideration because Lopez's notice of appeal from the order divested the trial court of jurisdiction.

DISCUSSION

First, Lopez argues overwhelming evidence established he was rehabilitated and the trial court abused its discretion by relying on two issues extrinsic to the petition. Second, he asserts public policy goals regarding rehabilitation support granting the petition. None of his contentions have merit.

"'With certain exceptions . . . , the certificate of rehabilitation procedure is available to convicted felons who have successfully completed their sentences, and who have undergone an additional and sustained "period of rehabilitation" in California. (§ 4852.03, subd. (a) [imposing general minimum requirement of five years' residence in this state, plus an additional period typically ranging between two and five years[, *for a total of seven to 10 years*,] depending upon the conviction] . . . .)' [Citation.]" (*People v. Zeigler* (2012) 211 Cal.App.4th 638, 652 (*Zeigler*).) "During the period of rehabilitation,

5

the 'person shall live an honest and upright life, shall conduct himself or herself with sobriety and industry, shall exhibit a good moral character, and shall conform to and obey the laws of the land.' (§ 4852.05 . . . .)" (*Zeigler, supra,* 211 Cal.App.4th at p. 652.)

"'The superior court holds a hearing and considers testimonial and documentary evidence bearing on the petition. (§§ 4852.1, 4852.11.) To this end, the court may compel the production of judicial, correctional, and law enforcement records concerning the crimes of which [the] petitioner was convicted, his performance in custody and on supervised release, and his conduct during the period of rehabilitation, including all violations of the law known to any peace officer. [Citation.] The district attorney may be directed to investigate and report on relevant matters. (§ 4852.12.)' [Citation.] '[A] court may, but is not mandated to, require "testimony as it deems necessary" and an investigative report from the district attorney of the petitioner and his residence, in addition to any documentary evidence a petitioner presents.' [Citations.]" (*Zeigler, supra,* 211 Cal.App.4th at p. 653.)

"Section 4852.13 gives the court discretion to decide whether a petitioner has demonstrated to the court's satisfaction, 'by his or her course of conduct his or her rehabilitation and . . . fitness to exercise all of the civil and political rights of citizenship.' (§ 4852.13, subd. (a).) 'To enter an order known as a certificate of rehabilitation, the superior court must find that the petitioner is both rehabilitated and fit to exercise the rights and privileges lost by reason of his conviction.' [Citations.] The overall goal of the statutory scheme is 'to restore civil and political rights to ex-felons who have proved their rehabilitation.' [Citations.]" (*Zeigler, supra,* 211 Cal.App.4th at p. 653.) The trial court may not grant a certificate of rehabilitation to any person convicted of an offense specified in section 290 if the court determines the person poses a continuing threat to commit any of the offenses in section 290. (§ 4852.13, subd. (b).)

"A certificate of rehabilitation is not '*necessarily* available to any convicted felon who claims to meet the minimum statutory requirements and is otherwise eligible to

apply.' [Citation.] '[T]he superior court conducts a thorough inquiry into the applicant's conduct and character from the time of the underlying crimes through the time of the certificate of rehabilitation proceeding. (§§ 4852.1-4852.12.) The standards for determining whether rehabilitation has occurred are high. (§§ 4852.05, 4852.13(a); see §§ 4852.11, 4852.13(b).) The decision whether to grant relief based on the evidence is discretionary in nature . . . . [T]here is no circumstance under which the statutory scheme requires or guarantees issuance of a certificate of rehabilitation by the superior court.' [Citations.]" (*Zeigler, supra,* 211 Cal.App.4th at pp. 653-654.) If the trial court grants a certificate of rehabilitation, it acts as an application for a full pardon. (§§ 4852.13, subd. (a), 4852.16.)

Here, the trial court did not abuse its discretion by denying the petition because Lopez did not satisfy the high standards necessary for granting such petitions. (*People v. Blocker* (2010) 190 Cal.App.4th 438, 445 (*Blocker*) [hurdles the Legislature erected to obtain rehabilitation certificate "not intended to be easily surmounted"].) After conducting a thorough inquiry, the court reached its conclusion based on its finding Lopez was not truthful with Thomas about the 2004 conviction, or with the court, about his State Bar disciplinary history. (§ 4852.05 [petitioner must demonstrate he has lived honest and upright life].)

Lopez goes to great pains to explain why neither the 2004 conviction nor his State Bar disciplinary proceedings were of any relevance to his petition. With respect to the State Bar proceedings, Lopez defines "concealment" for us and asserts the petition for certificate of rehabilitation and pardon form "does not ask for such matters to be disclosed" and it did not involve moral turpitude. Although we agree with Lopez the form does not require disclosure of State Bar disciplinary proceedings, we once again note it was his burden to establish he was rehabilitated. Attached to his form filed with the trial court, Lopez included a motion and points and authorities. He also filed numerous exhibits. Nowhere in these documents did he mention the State Bar

7

disciplinary proceedings. His biography included information about graduating law school and being admitted to the State Bar, but he did not mention the State Bar disciplinary proceedings. In fact, when discussing his business prospects, Lopez stated he was a lawyer and administrator at two law firms and he assists new lawyers with trial advice and "ethics training." This seems to us like an appropriate place for Lopez to discuss his own ethical lapses. But he did not do so.

Lopez cites to the State Bar's stipulation concerning the 2007 disciplinary proceedings. The stipulation states the following: "[Lopez's] misconduct herein does not involve moral turpitude." After explaining Lopez failed to adequately supervise his employees, the stipulation continued, "[a]nd although the misapplication of trust funds was willful [*sic*], [Lopez] did not intend to use the funds for his personal use, or for any improper purpose." Lopez stresses his conduct did not involve moral turpitude in asserting the trial court erred by relying on the State Bar disciplinary proceedings. Lopez's State Bar disciplinary history was relevant to whether he conducted himself with industry and good moral character. The fact Lopez was prevented from practicing law for six months because he violated the rules governing that practice was a factor the court could consider in deciding whether he was rehabilitated. The fact Lopez failed to inform the court of his State Bar disciplinary history speaks to his veracity.

Lopez warns disclosure of "administrative actions" concerning employment opens a Pandora's Box requiring disclosure of foreclosures, litigation, tax audits, and Vehicle Code violations. We need not decide whether these "administrative actions" should be disclosed because we are not concerned with any of them here. What we are concerned with here is the State Bar suspending Lopez's law license. We remind Lopez that before he was admitted to the State Bar, he completed an application to determine whether he was of *good moral character*. In ruling on the petition, the trial court had to determine whether Lopez exhibited good moral character. The State Bar's determination Lopez had an ethical lapse was relevant to the court's determination.

8

As to his 2004 conviction, Lopez asserts Thomas knew of the conviction because his trial counsel told Thomas and Lopez also declared he "believe[d]" the packet he gave her included that information. We find telling a statement in Lopez's reply brief. He states, "[Lopez] read . . . Thomas's report and could have easily not included it in the [p]etition if [Lopez] felt there was some issue of veracity." On page four of her report, Thomas states, "Other than the prior conviction for molesting his stepdaughter, . . . Lopez has only had traffic tickets." Lopez read Thomas's report and was on notice she was not aware of the 2004 conviction. Lopez should have informed Thomas of the 2004 conviction.

Additionally, Lopez states he went to Thomas voluntarily to establish his rehabilitation at great time and expense. As we explain above, if a person was convicted of an offense subject to section 290 registration, the trial court may not grant a certificate of rehabilitation unless the court determines the person does not pose a continuing threat to commit an offense specific in section 290. (§ 4852.13, subd. (b); *Blocker, supra,* 190 Cal.App.4th at p. 445 & fn. 5 [granting petition would release petitioner from section 290 registration and although trial court did not cite as basis for denial court may have pondered § 4852.13, subd. (b)].) The best way for Lopez to establish he was not likely to reoffend was through expert testimony.

The record here demonstrates the trial court relied on the evidence it deemed most credible, evidence concerning Lopez's honesty. (*People v. Lockwood* (1998) 66 Cal.App.4th 222, 229 (*Lockwood*).) Lopez asks us to second guess the trial court and instead rely on evidence he deems most credible, "overwhelming" evidence of his rehabilitation. As we explain above, whether to grant a rehabilitation certificate is within the sole discretion of the trial court, and absent a miscarriage of justice, we will not disturb the court's ruling. (*Id.* at p. 227.)

Finally, public policy goals regarding rehabilitation do not require us to conclude the court's ruling exceeded the bounds of reason. Although the goal is to

reduce recidivism and restore civil and political rights (*Lockwood, supra,* 66 Cal.App.4th at p. 230), again the petitioner must surmount high hurdles to obtain a rehabilitation certificate. The court did not abuse its discretion in concluding Lopez did not surmount the hurdles this time around. But as Lopez is aware, the court denied his petition *without* prejudice. Like the trial court, we agree Lopez provided credible evidence he is a candidate for rehabilitation. He may file his petition for certificate of rehabilitation and pardon again pursuant to the statutory time requirements. (See § 4852.03.)

DISPOSITION

The order is affirmed.

O'LEARY, P. J.

WE CONCUR:

MOORE, J.

ARONSON, J.